NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 251158-U

NO. 4-25-1158

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* H.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
| Petitioner-Appellee, | ) | No. 23JA26 |
| v. | ) | |
| Pearly H., | ) | Honorable |
| Respondent-Appellant). | ) | Heidi A. Benson, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court granted the motion to withdraw as appellate counsel and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2     Respondent mother, Pearly H., appeals the trial court's judgment terminating her parental rights to her daughter, H.M. (born in March 2022). On appeal, respondent's appellate counsel moves to withdraw on the ground no issue of arguable merit can be raised. For the reasons that follow, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     The parental rights of the minor's father were also terminated during the proceedings below. He is not, however, a party to this appeal.

¶ 5                          A. Petition to Terminate Parental Rights

¶ 6     In March 2025, the State filed a petition to terminate respondent's parental rights.

In the petition, the State alleged respondent was an unfit parent in that she failed to (1) make reasonable progress toward the return of the minor to her care within a nine-month period following the minor's February 1, 2024, adjudication of neglected, namely June 1, 2024, to March 1, 2025 (750 ILCS 50/1(D)(m)(ii) (West 2024)). The State further alleged it was in the minor's best interests to terminate respondent's parental rights.

¶ 7                                  B. Fitness Hearing

¶ 8            In August 2025, the trial court held a fitness hearing. The State presented testimony from (1) a caseworker who had been assigned to the minor's case since March 2024 and (2) a therapist who worked with respondent from early 2024 through April 2025. The State also presented multiple letters from respondent's former therapist and two service plans. Finally, the State asked the court to take judicial notice of specific pleadings and orders filed in the instant case, which the court granted. Respondent presented a letter of employment. The following is gleaned from the evidence presented.

¶ 9            In February 2024, the minor was adjudicated neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)) based upon her exposure to domestic violence between respondent and respondent's paramour. Shortly following the adjudication, the minor was removed from respondent's care and placed in the care of the Illinois Department of Children and Family Services (DCFS). The removal was due, in part, to respondent continuing to allow her paramour into the home despite the issues of domestic violence.

¶ 10           It was initially recommended respondent (1) complete domestic violence education, (2) complete a mental health assessment and any recommended treatment, (3) complete parenting education, (4) cooperate with DCFS, and (5) obtain and maintain suitable housing. After

an August 2024 drug test was positive for methamphetamine, a recommendation was added for respondent to complete a substance abuse assessment and any recommended treatment. Respondent was informed of the recommended services.

¶ 11 Respondent was initially engaged in the recommended domestic violence education but was then discharged from the program because she was threatening people. She was referred to another program but later indicated she could not attend that program due to a lack of transportation. She was referred to a different program, where she completed an intake. The intake recommended 26 classes, which respondent had not completed. In October 2024, respondent was involved in another instance of domestic violence with her paramour.

¶ 12 Respondent completed the recommended mental health assessment. The assessment resulted in a recommendation for counseling to increase respondent's ability to manage stressors and her mental health, improve her emotional regulation, and increase her interpersonal effectiveness. Respondent's attendance at counseling was sporadic. In a February 2025 letter, respondent's then therapist wrote, "[Respondent] has demonstrated making very little progress toward her goals of improving emotional regulation and interpersonal effectiveness, as well as building distress tolerance." That therapist also testified "it was difficult to determine progress," given respondent's lack of attendance.

¶ 13 Respondent completed the recommended parenting education prior to the period identified in the State's petition.

¶ 14 Respondent, following the August 2024 positive drug screen for methamphetamine, completed a substance abuse assessment in October 2024. She then participated in one session with a substance abuse counselor in November 2024. Respondent had additional positive drug screens for methamphetamine in November 2024 and February 2025.

¶ 15 Respondent failed to maintain consistent contact with the minor's caseworker. She failed to consistently attend in-person meetings or respond to electronic communications. She occasionally reported the lack of communication was due to issues with her cell phone.

¶ 16 Respondent failed to obtain and maintain stable housing. She reported several addresses where she was staying throughout the relevant period. She was working with a provider to obtain housing assistance.

¶ 17 Respondent attended visits with the minor, which occurred once a week. The visits went well. Respondent attended most visits. She drove to the visits.

¶ 18 Respondent worked for DoorDash in March 2025.

¶ 19 After considering the evidence and arguments presented, the trial court found respondent was an unfit parent in that she failed to make reasonable progress toward the return of the minor to her care within the nine-month period identified in the State's petition.

¶ 20 C. Best-Interest Hearing

¶ 21 In October 2025, the trial court held a best-interest hearing. The State presented testimony from the minor's caseworker. The State also asked the court to take judicial notice of two criminal cases involving respondent, which the court granted. Respondent testified on her own behalf. She also presented a letter from a service provider. The following is gleaned from the evidence presented.

¶ 22 The minor, who was approximately three-and-a-half years old at the time of the hearing, had been in her current foster placement, a relative placement, since February 2024. One of her foster parents was her father's cousin. The minor had a three-year-old foster brother, the biological child of her foster parents. The minor was doing well in placement, and the foster parents ensured her needs were met. The foster parents provided the minor with her own room and

- 4 -

belongings. The minor received early interventions, and her speech had substantially improved since being in placement. The minor went to her foster mother for comfort and referred to her as "mom." The foster parents were committed to providing permanency through adoption.

¶ 23 A bond existed between the minor and respondent. Respondent had made progress on the service recommendations since the fitness hearing. She was engaging in domestic violence education and substance abuse treatment and attending therapy. She was participating in drug court and attending Narcotics Anonymous. She obtained housing, continued to be employed by DoorDash, and attended visits with the minor, which had been changed to once a month. She was not in a romantic relationship. As to a prior request respondent made for criminal charges to be dropped against her former paramour, she acknowledged that request was made because she "was not logically thinking as [she] was not sober." Respondent had a positive drug screen for methamphetamine in September 2025. Respondent believed she was able to provide for the minor.

¶ 24 The minor's caseworker and the guardian *ad litem* believed it would be in the minor's best interest to terminate respondent's parental rights. Respondent disagreed.

¶ 25 After considering the evidence and arguments presented, as well as the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)), the trial court found it would be in the minor's best interest to terminate respondent's parental rights. In the oral pronouncement of its decision, the court stated:

> "With regard to [respondent], that is a lot tougher because the Court has to acknowledge that she did start making progress at the very end of the case. *** But, unfortunately, that is too little too late in terms of engaging with the services, and I'm absolutely full of regret with how this has played out, [respondent].
>
> We started this case as an intact trying to keep [H.M.] in your home. And if

you would have done all of these things, these wonderful things at the beginning of the case, we never would have removed her. It would have been an intact case, but we had to remove her and still that wasn't the wake-up call. You still didn't do the things that you were supposed to do. And I absolutely believe your testimony.

You have made some wonderful, positive changes in your life recently. And I do not want to take anything away from the work that you're doing to maintain sobriety, to work with [your service provider], all of those things are wonderful. But that's not the way the law is written. *** [A]lthough I acknowledge that you're in drug court and, for the most part, it sounds like you're doing well. Even between fitness, the Fitness Hearing in August and today's hearing, you had a slip-up.

When we were at fitness, you weren't through the domestic violence classes. Maybe you are now. I don't know. I don't have a certificate. But that was a very significant situation that we had *** with the domestics, and I think really you said it best. You said I wasn't logically thinking because I wasn't sober. And I completely believe that, but you're just really a few weeks into sobriety at this point. And, again, I don't want to take anything away from your hard work, and I do not want in any way to jeopardize your sobriety.

I really want you to be well, and I wish the foster parents were here because I would tell them also that I would wish for them to make sure that [H.M.] knows you. But the law is on the side of the State and their Petition, and the Court does find by a preponderance of the evidence that it's in [H.M.'s] best interests that parental rights be terminated."

¶ 26   This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28         On appeal, respondent's appellate counsel moves to withdraw on the ground no issue of arguable merit can be raised. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding *Anders* applies to parental rights cases). Appellate counsel supported his motion with a brief identifying potential issues and explaining why he believes they would be frivolous. Notice of the motion was given to respondent. Respondent has not filed a response to counsel's motion.

¶ 29                                  A. Unfitness Finding

¶ 30         Appellate counsel indicates he considered challenging the unfitness finding but concluded any argument in support thereof would be frivolous. We agree.

¶ 31         In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 32         Relevant here, section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)) states a parent will be considered an "unfit person" if she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." Reasonable progress has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's
>
> directives, in light of the condition which gave rise to the removal of the child, and

in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007).

¶ 33    In this case, the evidence showed respondent largely failed to engage with the recommended services during the time period identified in the State's petition to terminate parental rights. In addition, the evidence showed, during the relevant time period, respondent tested positive for methamphetamine, which created an additional service recommendation, and then had additional positive test results for methamphetamine. Given respondent's minimal progress with the recommended services and drug use during the relevant time period, we agree any argument contesting the trial court's unfitness finding would be frivolous.

¶ 34                    B. Best-Interest Finding

¶ 35    Appellate counsel indicates he also considered challenging the best-interest finding but concluded any argument in support thereof would be frivolous. We agree.

¶ 36    In a proceeding to terminate parental rights, the State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883 (2010). Again, a finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *Id.*

¶ 37    When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2024). The focus is on the child, and

the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 38 In this case, the record shows the trial court found it would be in the minor's best interest to terminate respondent's parental rights after considering the evidence and arguments presented, as well as the statutory best-interest factors. The evidence showed the minor had been placed with her foster parents for almost half her life. She was doing well in the foster home, and her needs were being met. The foster parents were committed to providing the minor with permanency through adoption. Conversely, while respondent had made recent progress with the recommended services, she had not completed those services and continued to use methamphetamine. Given the minor's needs for permanency and stability, we agree any argument challenging the best-interest finding would be frivolous.

¶ 39 In so finding, we, like the trial court, commend respondent for her efforts to engage in the recommended services following the fitness hearing and encourage her to continue those efforts. We also highlight, in writing, the trial court's statement that it would have encouraged the foster parents to ensure the minor knows respondent had they been present at the hearing. If respondent's efforts persist, and if it would be in the minor's best interest, we encourage the foster parents to allow for a relationship between the minor and respondent.

¶ 40                                    III. CONCLUSION

¶ 41 Because the record reveals no issue of arguable merit can be raised on appeal, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 42 Affirmed.